IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:20-cr-00093-SMR-SBJ |
| Plaintiff, | |
| v. | ORDER ON DEFENDANT'S MOTION TO SUPPRESS |
| JUSTIN TREANTON, | |
| Defendant. | |

Before the Court is Defendant Justin Treanton's Motion to Suppress. [ECF No. 33]. Defendant seeks exclusion of evidence obtained during a police interview. He argues that the interview was a custodial interrogation and because he was not read his *Miranda*[1] rights, his statements and consent to search two cellular phones were involuntary and coerced. The Government resists the Motion, contending that Defendant was not in custody at the time and his statements and consent were both voluntary and uncoerced. For the reasons described below, Defendant's Motion to Suppress is DENIED.

I. BACKGROUND

Agents with the United States Department of Homeland Security Investigations ("Agents") received a tip from an undercover officer out of New Zealand regarding activity on the social media platform "RIOT.IM." The officer reported that he observed that an individual going by the username "underdawgy" had posted video files and a link in a public chat room. The room was named for a category of child pornography. The link posted by underdawgy contained child

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

pornography. One of the videos in the link contained a partial image of a male's face. The New Zealand officer then initiated contact with underdawgy, who invited the agent to a private chat room where more images and videos of child pornography were shared by the individual. Underdawgy told the officer that his four-year-old daughter was depicted in the files. When asked how long he had been "playing" with his daughter, underdawgy responded "[a]ltogether about a year." Underdawgy told the officer he was a 35-year-old male from the United States. The location of underdawgy was soon traced to a home in Bettendorf, Iowa. Agents then requested driver's license and vehicle registration information for the Bettendorf address and Defendant was among those identified with the address. The photograph on Defendant's driver's license, along with a previous arrest photograph reviewed by the Agents, bore similarities to the partial face seen in the video sent by New Zealand authorities.

The Agents executed a search warrant at the Bettendorf address on January 30, 2020. There, the Agents encountered members of Defendant's family including his mother, step-father, and half-brother. Also present was a four-year-old girl identified as Defendant's daughter. The Agents learned that Defendant had a bed in the garage but did not regularly stay at the home and he was not present at the time. Defendant's step-father was shown an image of the face appearing in the video and said he believed it was Defendant.

After further investigation, the Agents determined that Defendant may be staying at a home elsewhere in Bettendorf. When contacted, the homeowner denied that Defendant was at the home but told the Agents they could search the garage for him. Upon arrival, they entered the garage through the home, encountering garbage and boxes, stacked nearly to the ceiling. Agents saw Defendant in the middle of the debris and instructed him to come toward them. As Defendant was climbing over the boxes, a different group of Agents opened the bay door and observed him

climbing in the opposite direction. After inadvertently providing Defendant with conflicting instructions about whether to crawl forward over the debris, or backward over the debris, causing Defendant to stall on top of a five-feet tall pile of debris, one of the bay door agents grabbed Defendant, pulling him off the boxes and he landed hard on the ice outside the garage. As he lay on the ground, Defendant held his hands underneath his body and refused to release his hands so he could be handcuffed. After Agents said they saw an object in Defendant's hand, one of them struck him in the face with a closed fist in an attempt to get Defendant to release his hands. Agents searched Defendant's pockets and discovered two pairs of underwear, one in each pocket. Defendant told them one pair belonged to his aunt and the other to his daughter. He was then stood up, his handcuffs were removed, and he was told he was not under arrest. Two agents with the Iowa Division of Criminal Investigation ("DCI") then immediately walked Defendant to a vehicle located a short distance from the garage where he was interviewed.

Once in the vehicle, the DCI agents informed Defendant he was not under arrest multiple times. [ECF No. 41-1 at 0:35; 3:56] (sealed) (Gov't Exhibit 1). He was also told that he was free to go whenever he wished, *id.* at 4:02, and told he could choose to answer, or not answer, any questions he was asked, *id.* at 2:14; 4:01. Defendant proceeded to speak with the DCI agents for over 90 minutes, answering their questions about the photographs and videos under investigation. Defendant signed a written consent form to allow law enforcement to search two cellular phones in his possession. Near the end of the interview, law enforcement was notified that the county attorney had decided to arrest Defendant on state criminal charges. Defendant was then read his *Miranda* rights before being transported to jail.

Defendant was indicted by a grand jury on September 9, 2020, charging him with violations of 18 U.S.C. § § 2251 and 2252, for production, distribution, and possession of child pornography.

[ECF No. 2]. He moves to suppress the statements he made to the DCI agents during his interview and the evidence obtained from the search of the phones. Defendant asserts he was in custody at the time of the interview and his statements and consent to search were involuntary and coerced.

## II. ANALYSIS

Defendant claims that his interview with DCI agents in the vehicle was a custodial interrogation. It is undisputed that Defendant was not read his *Miranda* rights until long after the interview had commenced, and he seeks to exclude all statements and his consent to search as a result.

Prior to a custodial interrogation a suspect must be advised: (1) that he has a right to remain silent, (2) that anything he might say may be used in evidence against him, (3) that he has a right to the presence of an attorney, and (4) that if he cannot afford counsel he may have counsel appointed. *Miranda*, 384 U.S. at 444, 471. Importantly, "[s]eizure is a necessary prerequisite to *Miranda*." *United States v. Parker*, 993 F.3d 595, 601 (8th Cir. 2021) (citation omitted). To that point, "[n]ot all interactions between law enforcement officers and citizens amount to seizures." *United States v. Cook*, 842 F.3d 597, 600 (8th Cir. 2016). The inquiry into whether an interaction between law enforcement and a citizen is a custodial interrogation is an objective one. *See Stansbury v. California*, 511 U.S. 318, 323 (1994) (determining if a suspect is in custody is based on the objective circumstances of the interrogation, not on subjective views by either law enforcement or the suspect).

"The 'ultimate question in determining whether a person is in "custody" for purposes of *Miranda* is whether there is a formal arrest or restraint on freedom of movement of the degree associated with formal arrest.'" *United States v. Williams*, 760 F.3d 811, 814 (8th Cir. 2014) (citation omitted). The core of the inquiry into whether a suspect is in custody is "whether, given

the totality of the circumstances, a reasonable person would have felt at liberty to terminate the interrogation and leave or cause the agents to leave." *United States v. Laurita*, 821 F.3d 1020, 1024 (8th Cir. 2016) (citation omitted); *United States v. Perez-Sosa*, 164 F.3d 1082, 1084 (8th Cir. 1998) ("A consensual encounter becomes a seizure when a reasonable person in the same circumstances would not feel free to leave."). An interaction between law enforcement and a suspect can also begin as a consensual encounter but be rendered unlawful by the length and manner of the continued detention. *See United States v. Maltais*, 403 F.3d 550, 557 n.5 (8th Cir. 2005) (collecting cases finding detentions unlawful based on their circumstances and length).

Evidence obtained in violation of the United States Constitution is subject to the exclusionary rule, in both state and federal court. *See Mapp v. Ohio*, 367 U.S. 643, 655 (1961); *Weeks v. United States*, 232 U.S. 383, 398 (1914). Failure to provide *Miranda* warnings during a custodial interrogation violates a criminal defendant's Fifth Amendment privilege against self-incrimination and statements given during the interrogation are inadmissible against the defendant. *Miranda*, 384 U.S. at 492. The same goes for a warrantless search without a judicially recognized exception—such as voluntary consent—which violates a criminal defendant's Fourth Amendment right to be free from unreasonable searches and seizures. *See United States v. Riesselman*, 646 F.3d 1072, 1078 (8th Cir. 2011) ("Evidence obtained in violation of the Fourth Amendment . . . 'cannot be used in a criminal proceeding against the victim of the illegal search and seizure.'" (citation omitted)). The Fourth Amendment's warrant requirement extends to cellular phones. *Riley v. California*, 573 U.S. 373, 386 (2014).

In his Motion, Defendant argues that his statements and consent were involuntary and coerced. He supports his contention by pointing to the punch he received from an agent during the struggle outside of the garage, that he was initially handcuffed prior to being led to the vehicle

for the interview, and the officers involved in the use of force on him were present outside the vehicle during the interview.[2]  Defendant also relies on the fact that one officer initially told him that he was under arrest.

Defendant spoke with the DCI agents in the vehicle for approximately 90 minutes prior to being told he was under arrest and read his *Miranda* rights.  During the course of the interview, Defendant signed a written consent to search both of his phones.  [ECF Nos. 40-3; 41-1 at 49:25; 59:25].  He was told by the DCI agents he did not have to answer questions multiple times, that he was free to go, and that he was not under arrest.  [ECF No. 41-1 at 0:35; 2:14; 3:56; 4:01; 4:02].  The tone of the interview was cordial and friendly.  Defendant spoke with the DCI agents for well over an hour, answering their questions, and offering no outward indication of an unwillingness to continue the interview.  No threats were issued.  No harsh language was used by the DCI agents.  Voices were never raised by the DCI agents or Defendant.  Defendant even complimented the DCI agents telling them they were "honest."  *Id.* at 1:01:42; 1:15:45.  After being told he was formally under arrest, Defendant was allowed to smoke a cigarette prior to being transported to jail, to which he told the DCI agents they were "nice."  *Id.* at 1:19:40.

There is nothing to indicate that Defendant's "'will was overborne' by the circumstances surrounding" his interview.  *Dickerson v. United States*, 530 U.S. 428, 434 (2000) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)).  The "totality of all the surrounding circumstances," including the environment of the interview and the characteristics of Defendant, are insufficient to indicate that the statements given to the DCI agents were coerced or compelled.  *Id.*

---

[2] The agent who punched Defendant while he was on the ground immediately left the scene after Defendant was placed in the vehicle with the DCI agents.

Likewise, as it pertains to Defendant's consent to search both of the cellular phones. Defendant signed a written consent to search the phones. In fact, one of the phones, a red iPhone, was dropped by Defendant during the initial contact in the garage and he told his interviewers where they could find it prior to signing the consent form. He also provided his passcode to allow access to the phone.

In total, Defendant's will was not overborne during his interview with the DCI agents in the vehicle. He was told on multiple occasions he did not need to answer questions, could leave if he so desired, and was not under arrest. Defendant interacted with the agents in a friendly manner, engaging in small talk and volunteering information even when not asked. There was no violation of either his Fourth or Fifth Amendment rights during the interview.

## III.  CONCLUSION

For the reasons described above, Defendant's Motion to Suppress, [ECF No. 33], is DENIED.

IT IS SO ORDERED.

Dated this 28th day of June, 2021.

_____
STEPHANIE M. ROSE, JUDGE
UNITED STATES DISTRICT COURT