```
1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF IOWA
2                        DAVENPORT DIVISION

3    UNITED STATES OF AMERICA,)
                             )
4               PLAINTIFF,   )
                             )  CRIMINAL ACTION
5          VS.               )  FILE NO. 3:20-cr-00093
                             )
6                            )
     JUSTIN TREANTON,        )  TRANSCRIPT OF PLEA
7                            )  PROCEEDINGS
                DEFENDANT.   )
8    _____)

9

10

           BEFORE THE HONORABLE STEPHEN B. JACKSON, JR.
11              Friday, November 5, 2021, 9:50 a.m.
                      Davenport, Iowa 52801
12

13   APPEARANCES:

14        FOR THE GOVERNMENT:          TORRIE SCHNEIDER
                                       ASSISTANT U.S. ATTORNEY
15                                     131 E. Fourth Street
                                       Davenport, Iowa 52801
16
          FOR THE DEFENDANT:           JACK DUSTHIMER
17                                     ATTORNEY AT LAW
                                       1503 Brady Street
18                                     Davenport, Iowa 52803

19

20

21                 DEBRA M. THORNBURG, CSR, RPR, CRR
                    FEDERAL OFFICIAL COURT REPORTER
22                     UNITED STATES COURTHOUSE
                         131 EAST FOURTH STREET
23                       DAVENPORT, IOWA 52801

24
     PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY, TRANSCRIPT
25   PRODUCED BY CAT
```

P R O C E E D I N G S

THE COURT:  Good morning.  This case is United
States of America v. Justin Treanton.  This case -- this is
Case No. 3:20-cr-93.  The Government appears by Assistant U.S.
Attorney Torrie Schneider, who is here for her colleague,
Andrea Glasgow.  Justin Treanton appears personally with his
attorney, Jack Dusthimer.

Mr. Treanton, I want to remind you, I'm United
States Magistrate Judge Stephen Jackson, Jr.  I let you know
that because your case is also assigned to a district judge
and for you that's Judge Stephanie Rose.  I let you know that
because you have the right to have a district judge preside
over any guilty plea proceeding.  As a magistrate judge, I can
preside over this hearing, but only with your voluntary
consent and so I need to confirm, Mr. Treanton, do you agree
this guilty plea proceeding may be conducted by me?

THE DEFENDANT:  Yes, sir.

THE COURT:  Okay.  Mr. Dusthimer, would you just
assist your client and move the microphone forward for him?
Thank you.

I'm going to be asking you a lot of questions today,
Mr. Treanton, so I want to be sure I can hear you clearly.
Even though I'm going to be conducting this guilty plea
proceeding, do you understand that the sentencing hearing will
still be conducted by Judge Rose?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Okay.  Did you sign a written consent to

3     allow me to conduct this hearing today?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  Mr. Dusthimer, did you sign the consent

6     for your client?

7          MR. DUSTHIMER:  I did.

8          THE COURT:  And Ms. Schneider, did you sign the

9     consent on behalf of the Government?

10         MS. SCHNEIDER:  Yes, your Honor.

11         THE COURT:  I'll remind counsel to please stow and

12     turn off your cellphones during the hearing today.

13         Mr. Treanton, before I can recommend to Judge Rose

14     that she accept guilty pleas from you, I have to ask you

15     questions, and the answers to those questions must be under

16     oath, so I want to ask you that you please stand at this time,

17     and our clerk is gonna place you under oath.

18         **DEFENDANT SWORN**

19         THE COURT:  You can have a seat.

20         So Mr. Treanton, you're now under oath.  If you make

21     any false statements, you need to know that you can be

22     prosecuted for the crime of perjury and/or for the crime of

23     making a false statement.  Those are two separate crimes.  Do

24     you understand that you are now under oath and you are

25     required to tell the truth?

1           THE DEFENDANT:  Yes, sir.

2           THE COURT:  All right.  In viewing the docket in

3    preparation for this hearing today, I did not note a Rule 5

4    order entered and so the parties may have been previously

5    advised of these matters, and it may have been that a Rule 5

6    order was not entered.  Regardless, I'm going to cover that at

7    this time and pursuant to the Due Process Protections Act

8    confirm that in this case the United States has had the

9    obligation to disclose to Defendant all exculpatory evidence.

10          That is evidence that favors the defendant or casts

11   doubt on the United States' case.  They're required to do so

12   by the case of Brady v. Maryland and its progeny.  The United

13   States is ordered to do that.  The parties are reminded that

14   failure to disclose exculpatory evidence in a timely matter

15   may result in consequences which include but are not limited

16   to exclusion of evidence, adverse jury instructions, dismissal

17   of charges, contempt proceedings, disciplinary actions or

18   sanctions by the Court.  I will enter a written order to that

19   effect today as well.

20          Ms. Schneider, can you confirm the Government has

21   complied with this?

22          MS. SCHNEIDER:  I have no reason to believe it

23   hasn't.

24          THE COURT:  All right.  Mr. Dusthimer, do you have

25   any reason to believe the Government has not complied with its

1    obligations set forth in Brady v. Maryland and as I have just

2    outlined?

3              MR. DUSTHIMER:  Similarly, it appears to me that the

4    Government has complied with all its requirements.

5              THE COURT:  All right.  So just remind you, Mr.

6    Treanton, you're under oath so you're required to tell the

7    truth.  Do you understand that?

8              THE DEFENDANT:  Yes, sir.

9              THE COURT:  Would you please state your full name?

10             THE DEFENDANT:  Justin Lee Treanton.

11             THE COURT:  How old are you?

12             THE DEFENDANT:  I'm be 37 in four days.

13             THE COURT:  All right.  Happy early birthday.  How

14   far did you go in school?

15             THE DEFENDANT:  I got a GED.

16             THE COURT:  Any college courses that you've taken?

17             THE DEFENDANT:  No.

18             THE COURT:  Do you have any difficulty reading or

19   understanding the English language?

20             THE DEFENDANT:  No.

21             THE COURT:  It is critically important you

22   understand everything we do today, so during this hearing at

23   any time if something comes up that you don't understand, if

24   you simply don't hear something someone says because of our

25   masks or otherwise or if you feel you need to discuss anything

1    with your attorney, will you let me know that?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  That is so important, I'm giving you

4    permission to interrupt me or any one of us if one of those

5    things happens.  Will you do that if you need to?

6              THE DEFENDANT:  Yes, sir.

7              THE COURT:  Good.  First I need to ask you some

8    preliminary questions to make sure you are able to understand

9    your rights.

10             Mr. Treanton, have you ever suffered from

11   depression, anxiety or any other mental illness?

12             THE DEFENDANT:  No, sir.

13             THE COURT:  Have you ever abused drugs or alcohol?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Are you currently under the influence of

16   any drugs or alcohol?

17             THE DEFENDANT:  No.

18             THE COURT:  Do you believe that your prior drug or

19   alcohol use affects your ability to understand what's going on

20   here today?

21             THE DEFENDANT:  No.

22             THE COURT:  Do you take any prescription medication?

23             THE DEFENDANT:  I do.

24             THE COURT:  What do you take, and what's it for?

25   Can you tell me?

1          THE DEFENDANT:  It's the generic to Prozac.  I think

2     you're aware of the predicament that happened with my family

3     in January.  My mom's house caught on fire, and I lost my mom,

4     I lost my stepfather, and I lost my five-year-old daughter, so

5     I've been pretty depressed about that.  I wasn't able to get

6     out to go to the funerals or make any arrangements or anything

7     to that effect, so yeah, I'm on, I think it's 25 milligrams of

8     the generic Prozac.

9          THE COURT:  Okay.  Any other prescriptions that you

10    take?

11         THE DEFENDANT:  Hydrox- -- hydrox- -- I think it's

12    Hydroxyzine.

13         THE COURT:  What's that for?

14         THE DEFENDANT:  It's an anxiety --

15         THE COURT:  To address anxiety issues?

16         THE DEFENDANT:  Yes.

17         THE COURT:  Any other prescriptions?

18         THE DEFENDANT:  No.

19         THE COURT:  Okay.  So let's go back.  I asked you if

20    you have ever suffered from depression, anxiety, or any other

21    mental illness.  In fact, you're currently having depression

22    and anxiety.  Is that correct?

23         THE DEFENDANT:  Yes.

24         THE COURT:  All right.  So I just want to make sure

25    we're clear on that.  That's what I was getting at, these

1    types of things.

2            THE DEFENDANT:  Right.

3            THE COURT:  That's kind of why I cover all the bases

4    so if maybe you didn't understand something, I cover things

5    fully, so do you believe that the depression or anxiety you

6    described or the medication you take for those things affect

7    your ability to understand what's going on here today?

8            THE DEFENDANT:  No, sir.

9            THE COURT:  Do you believe you're of clear and sound

10   mind today?

11           THE DEFENDANT:  Yes.

12           THE COURT:  Do you believe that you can make

13   decisions today that will have a major impact in your life?

14           THE DEFENDANT:  Yes, sir.

15           THE COURT:  Any doubt about that whatsoever, Mr.

16   Treanton?

17           THE DEFENDANT:  No.

18           THE COURT:  Okay.  Good.  Do you know of any other

19   reason why you might have difficulty understanding these

20   proceedings?

21           THE DEFENDANT:  None.

22           THE COURT:  Mr. Dusthimer, do you have any reason to

23   believe your client might not be competent to enter a guilty

24   plea today?

25           MR. DUSTHIMER:  I believe he is competent to enter a

1    guilty plea today.

2            THE COURT:  So Mr. Treanton, you've been charged by

3    indictment in four counts.  Counts 1 and 2 each charge you

4    with Production of Child Pornography but on different

5    occurrences.  Count 3 charges you with Receiving and

6    Distributing Child Pornography, and Count 4 charges you with

7    Possession of Child Pornography.

8            Have you had a chance to discuss those charges in

9    detail with Mr. Dusthimer?

10           THE DEFENDANT:  Yes, sir.

11           THE COURT:  Okay.  I'm advised that you desire to go

12   forward today and enter a plea of guilty to Counts 1 and 4 and

13   to change your previous plea of not guilty to those counts and

14   enter a plea of guilty to those counts.  Is that correct?

15           THE DEFENDANT:  Yes, sir.

16           THE COURT:  Before we go any further, I need to be

17   sure you understand you are not required to enter any guilty

18   pleas today.  If you want, you can continue to persist in your

19   plea of guilty to all four counts and go to trial.

20           I'm sorry.  You can continue to persist in your plea

21   of not guilty to all four counts and go to trial.  Do you

22   understand that?

23           THE DEFENDANT:  Yes, sir.

24           THE COURT:  Understanding that, is it still your

25   desire to go forward today and enter a plea of guilty to Count

1 and Count 4?

       THE DEFENDANT:  Yes, sir.

       THE COURT:  Before I can recommend to Judge Rose that she accept those guilty pleas, I must ask you additional questions to make sure you understand your rights.  First, you have the right to have a lawyer help and represent you at every stage of this case.  In your case Attorney Jack Dusthimer has been appointed to represent you at public expense.  I want to be sure you know that if you wanted to maintain your plea of not guilty on all four counts and go to trial, Mr. Dusthimer would continue to represent you at trial at no expense to you.

       Do you understand that?

       THE DEFENDANT:  Yes, sir.

       THE COURT:  And do you generally otherwise understand your right to an attorney in this case?

       THE DEFENDANT:  Yes.

       THE COURT:  Are you generally satisfied with the advice, services, and representation that you received from your attorney in this case?

       THE DEFENDANT:  Yes, sir.

       THE COURT:  Good.  Is there anything you've asked Mr. Dusthimer to do for you that he's not done for you in this case?

       THE DEFENDANT:  No, sir.

1          THE COURT:  Excellent.  Mr. Treanton, I want to talk

2    to you now about your trial rights.  You have the right to a

3    speedy and public trial before a jury of 12 people selected

4    from a cross-section of the community.  Both you and your

5    attorney would help choose the people who would serve on your

6    jury.  Any verdict by that jury would have to be unanimous.

7    That means that all 12 jurors would have to agree to the

8    verdict.  Your jurors would promise under oath to try your

9    case fairly based only on what is submitted into evidence at

10   the trial and on the instructions given to them by Judge Rose.

11          Do you understand your right to a jury trial?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  You also have the presumption of

14   innocence.  Judge Rose would tell the jury that you are

15   presumed innocent.  She would also tell them the presumption

16   of innocence remains with you unless at the end of your trial

17   the Government has convinced the jury of your guilt beyond a

18   reasonable doubt.  Judge Rose would tell the jury that the

19   presumption of innocence alone is enough for you to be found

20   not guilty of these charges.  Do you understand that?

21          THE DEFENDANT:  Yes.

22          THE COURT:  You also have what is called the right

23   to confrontation.  What that means is that the Government

24   would have to call its witnesses to testify under oath here in

25   court.  You would be able to see the witnesses as they

1    testify, and they would be able to see you.  Your attorney

2    would not have to question the Government's witnesses but if

3    he wanted to, he could confront them by cross-examining them.

4    Do you understand that by pleading guilty, you're giving up

5    your right to confront witnesses?

6              THE DEFENDANT:  Yes, sir.

7              THE COURT:  You also have the right to present a

8    defense.  The burden of proof remains on the Government

9    throughout the trial.  You would not have to put on a defense

10   or produce any evidence.  However, if you wanted to, you could

11   present any relevant evidence to the jury.  For example, you

12   could make witnesses come to court by having subpoenas served

13   on them.  If you could not afford to pay the costs necessary

14   to serve the subpoenas or get your witnesses to court, I would

15   make the Government pay those costs.  Do you understand that

16   by pleading guilty, you are giving up your right to present

17   any defense?

18             THE DEFENDANT:  Yes, sir.

19             THE COURT:  Finally, Mr. Treanton, you have the

20   right to remain silent.  You can testify at the trial if you

21   want to, but you would not have to.  If you decided not to

22   testify, the prosecutor would not say anything about it to the

23   jury.  In fact, Judge Rose would tell the jurors that you have

24   a constitutional right not to testify, and she would also tell

25   them they must not hold it against you if you do not testify.

1          Do you understand that?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  To summarize, Mr. Treanton, if you plead

4   guilty here today, you will not have a trial.  Instead you'll

5   be judged guilty based solely on your guilty pleas in the same

6   way as if a jury had returned guilty verdicts against you.  Do

7   you understand that by pleading guilty, you are giving up your

8   right to a jury trial?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Next I want to talk to you about the

11   penalties which apply in your case.  On Count 1 you can be

12   sent to prison for up to 30 years, and there's a mandatory

13   minimum prison sentence of at least 15 years.  Following your

14   imprisonment on Count 1, you could be placed on a term of

15   supervised release for up to your life, and there's a

16   mandatory minimum term of supervised release of at least five

17   years.  In addition to both of those things, you also can be

18   fined up to $250,000, and you will have to pay a mandatory

19   special assessment of $100 on Count 1.

20          On Count 4 you can be sent to prison for up to 20

21   years.  Following your imprisonment, you can be placed on a

22   term of supervised release for up to your life, and there's a

23   mandatory minimum term of supervised release of at least five

24   years.  In addition to both those things, you can be fined up

25   to $250,000, and there's a mandatory special assessment of

1   $100 on that count as well.  On both counts the judge has the

2   power to order forfeiture of property and restitution.  In

3   addition, if you're determined to be a nonindigent person, the

4   Court shall impose an assessment of $5,000 per count on Counts

5   1 and 4.

6           Do you understand all that?

7           THE DEFENDANT:  Yes, sir.

8           THE COURT:  Since you're pleading guilty to more

9   than one count, I need to talk to you about the potential

10  impact of multiple counts on your sentence.  You need to

11  understand that the sentences can be imposed by Judge Rose

12  consecutively.  Do you know what that means?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  Have you had a chance to discuss that

15  with Mr. Dusthimer?

16          THE DEFENDANT:  Yes.

17          THE COURT:  So consecutively means you serve one

18  sentence first.  Then when you're done with that, you serve

19  the second sentence so they run one after the other.  Do you

20  understand all that?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  All right.  So you know you have a

23  mandatory minimum of 15 years on Count 1, correct?

24          THE DEFENDANT:  Correct.

25          THE COURT:  You have a maximum of 30 years on Count

1    1 and 20 years on Count 4, so if you were to receive the

2    maximum sentence on both Count 1 and Count 4 and the judge ran

3    those consecutively, you could face up to a total of 50 years

4    in prison.  Do you understand that?

5              THE DEFENDANT:  Yes, sir.

6              THE COURT:  In addition, regardless of the sentence

7    you receive, you also could face a maximum fine of $250,000 on

8    each count for a total of up to $500,000.  Do you understand

9    that as well?

10             THE DEFENDANT:  Yes, sir.

11             MR. DUSTHIMER:  Did the Court want to speak to the

12   possible assessments in the same fashion or is that later?

13             THE COURT:  I'm not sure what you mean by the

14   possible assessments in the same fashion.  I discussed the

15   assessment of $5,000 per count if the Court determines Mr.

16   Treanton to be nonindigent.  Is that what you're referencing,

17   Mr. Dusthimer?

18             MR. DUSTHIMER:  Yes.

19             THE COURT:  Okay.  So at the time of sentencing,

20   Judge Rose will perform a calculation under the Federal

21   Sentencing Guidelines.  Those are guidelines issued by the

22   United States Sentencing Commission.  That calculation will

23   result in what is called an Advisory Guideline Range.  That is

24   a range of months within which the sentencing commission

25   suggests that you be sent to prison.  Judge Rose must consider

1    this range in determining your sentence, but she is not

2    required to sentence you within that range.

3            So long as the sentence she gives you is reasonable,

4    she can depart from the Advisory Guideline Range based on the

5    factors listed in the sentencing guidelines or she can vary

6    from the range based on the factors listed in the sentencing

7    statutes, so you could receive a sentence below or above the

8    Advisory Guideline Range.  In fact, you could receive a

9    sentence all the way up to the maximum statutory sentence,

10   which is 30 years in prison on Count 1 and 20 years in prison

11   on Count 4, for 50 years if those are run consecutively.

12           Do you understand all that?

13           THE DEFENDANT:  Yes.

14           THE COURT:  You also must know that however that

15   guideline range is calculated and regardless whether Judge

16   Rose departs or varies from the guidelines, she cannot

17   sentence you below 15 years in prison on Count 1 even if she

18   wanted to because that is the statutory mandatory minimum.

19           Do you understand that?

20           THE DEFENDANT:  Yes, sir.

21           THE COURT:  Mr. Treanton, has anyone promised you

22   that you will be eligible for a sentence of less than the

23   mandatory minimum?

24           THE DEFENDANT:  No.

25           THE COURT:  I'm sorry?

1          THE DEFENDANT:  No, sir.

2          THE COURT:  Okay.  You need to know you'll be in

3    custody for all of any prison sentence you receive, reduced

4    only by credit for good time you may earn.  Further, whatever

5    sentence you do receive, you will not see a parole board or be

6    paroled out of prison because there is no parole in the

7    federal court system.

8          Do you have any questions about any of that?

9          THE DEFENDANT:  No, sir.

10         THE COURT:  Mr. Dusthimer, have you given your

11   client the benefit of your advice as to the potential range of

12   punishment that you believe he realistically faces by pleading

13   guilty?

14         MR. DUSTHIMER:  Yes.

15         THE COURT:  Mr. Treanton, do you understand,

16   however, that the punishment is for Judge Rose to decide and

17   it might very well be different than what Mr. Dusthimer has

18   predicted?

19         THE DEFENDANT:  Yes, sir.

20         THE COURT:  Do you also understand you cannot

21   withdraw your guilty plea simply because your sentence might

22   be different than what has been predicted for you?

23         THE DEFENDANT:  Yes, sir.

24         THE COURT:  Mr. Treanton, are you a United States

25   citizen?

1          THE DEFENDANT:  I am.

2          THE COURT:  Then you also need to know that as a

3    result of this conviction, you'll be deprived of the right to

4    vote, to serve on a jury, to hold public office and to possess

5    firearms and ammunition.  Do you understand the loss of rights

6    associated with a felony conviction?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  Once you have served your prison

9    sentence, you'll be placed on supervised release.  During that

10   time, your conduct is monitored by a probation officer.  There

11   are a number of standard conditions of supervised release.

12   Those include that you cannot commit any federal, state or

13   local crimes, nor can you possess firearms, ammunition or

14   illegal controlled substances.  Judge Rose can also impose

15   additional special conditions.

16          If you violate any of the conditions of your

17   release, the judge can revoke it and require you to serve up

18   to an additional three years in prison on Count 1 and two

19   years in prison on Count 2 all without any credit for time

20   previously served.  Do you understand that?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  Do you have any questions about the

23   requirements of supervised release?

24          THE DEFENDANT:  No.

25          THE COURT:  Mr. Treanton, in addition, as a result

1   of this conviction, you'll be required to register as a sex

2   offender with the National Registry of Sex Offenders.  You'll

3   be required to register under the laws of the state where you

4   live.  Those requirements to register may be required from you

5   for the rest of your life.  Do you understand that?

6           THE DEFENDANT:  Yes, sir.

7           THE COURT:  Ms. Schneider, can you confirm, has the

8   Government complied with the applicable terms of the Crime

9   Victims Rights Act in this case?

10          MS. SCHNEIDER:  Yes, your Honor.

11          THE COURT:  So I mentioned to you, Mr. Treanton,

12  that you will be required to pay a mandatory special

13  assessment of $100 per count in this case, but because of the

14  nature of this case, if you are determined to be nonindigent,

15  then that assessment will be $5,000 per count.

16          Do you recall that?

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  In addition, you need to understand that

19  the Court would be required to order as restitution the full

20  amount of victims' losses in this case incurred or reasonably

21  predicted to be incurred for each victim, but that shall be no

22  less than $3,000 per victim.  This order of restitution will

23  be due and payable immediately.  If you're not able to make

24  such payment immediately, you'll be required to cooperate with

25  the probation office to establish a payment plan.

1          Do you understand all that?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  Any questions about the assessment in

4   this case or the restitution in this case?

5          THE DEFENDANT:  No.

6          THE COURT:  Ms. Schneider, are there any further

7   collateral consequences to these guilty pleas that we should

8   discuss and advise Mr. Treanton about?

9          MS. SCHNEIDER:  No, your Honor.

10          THE COURT:  Mr. Dusthimer, are you aware of any

11   other further collateral consequences we should discuss?

12          MR. DUSTHIMER:  No.  Thank you.

13          THE COURT:  So Mr. Treanton, at this time, before I

14   can recommend to Judge Rose that she accept your guilty pleas,

15   I need to establish facts to support convictions in this case.

16   Count 1 charges you with Production of Child Pornography.  To

17   convict you of that offense, the Government would be required

18   to prove beyond a reasonable doubt five things.

19          First, on the dates -- on or about the dates alleged

20   in the indictment, the victim was under the age of 18.

21   Second, you knowingly used the victim to engage in sexually

22   explicit conduct.  Third, you acted with the purpose of

23   producing a visual depiction of such sexually explicit

24   conduct.  Fourth, that visual depiction that you produced used

25   materials that had been mailed, shipped or transported across

1    state lines by foreign commerce by any means, including by

2    computer or cellphone.  Five, some or all this occurred in the

3    Southern District of Iowa.

4          Count 4 of the indictment charges you with the crime

5    of Possession of Child Pornography.  To convict you of that

6    offense, the Government would be required to prove beyond a

7    reasonable doubt four things.  First, that you knowingly

8    possessed one or more films, videotapes or other matters

9    containing a visual depiction.  Second, that the visual

10   depiction had been shipped or transported in interstate or

11   foreign commerce by they means, including by a computer or a

12   cellphone.  Third, the visual depiction involved a minor

13   engaging in sexually explicit conduct; and four, some or all

14   this conduct occurred in the Southern District of Iowa.

15         Ms. Schneider, did I recite accurately the elements

16   of both of these charges?

17         MS. SCHNEIDER:  Yes, your Honor.

18         THE COURT:  Mr. Dusthimer, do you agree?

19         MR. DUSTHIMER:  Yes.

20         THE COURT:  And do you believe Mr. Treanton

21   understands the elements of these two charges against him?

22         MR. DUSTHIMER:  Yes.

23         THE COURT:  Now, Mr. Treanton, I understand you've

24   entered into a plea agreement with the Government.  Is that

25   right?

1            THE DEFENDANT:  Yes, sir.

2            THE COURT:  Do you have a copy in front of you?

3            THE DEFENDANT:  I do.

4            THE COURT:  All right.  I'm gonna ask you questions

5    about a number of different provisions in this agreement and

6    so I'd ask Mr. Dusthimer to help you move the pages if he

7    could.  First I'd like to draw your attention to page 16.  Let

8    me know when you're there.

9            MR. DUSTHIMER:  We're there.

10            THE COURT:  Do you see on the bottom of the page

11    there's a line.  Below the line is a typewritten name and

12    above it is a signature?

13            THE DEFENDANT:  Correct.

14            THE COURT:  Is that your signature?

15            THE DEFENDANT:  Correct.

16            THE COURT:  What is the date that you signed this?

17            THE DEFENDANT:  Yesterday's date of 11/4/2021.

18            THE COURT:  Mr. Treanton, before you signed this

19    document, did you review it in detail with your attorney?

20            THE DEFENDANT:  I did.

21            THE COURT:  Do you understand all the terms of this

22    agreement?

23            THE DEFENDANT:  Yes.

24            THE COURT:  Do you have any questions about the plea

25    agreement that you reached with the Government?

1          THE DEFENDANT:  I do not.

2          THE COURT:  Mr. Dusthimer, is that your signature

3     above your name on page 17?

4          MR. DUSTHIMER:  Yes.

5          THE COURT:  And Ms. Schneider, I don't have a signed

6     copy, but on page 17 above your colleague's name, Ms. Glasgow,

7     is that her signature?

8          MS. SCHNEIDER:  No, your Honor.  I signed it on her

9     behalf today.

10          THE COURT:  Okay.  Thank you.

11          Mr. Dusthimer, would you just state briefly the

12     process by which you and Mr. Treanton reviewed and then

13     ultimately executed this agreement?

14          MR. DUSTHIMER:  I was appointed approximately 40

15     days ago.  When I first was appointed, it was because of an

16     unsuccessful plea.  I had opportunities to visit with my

17     client down in the Muscatine County Jail.  The most recent

18     visit was yesterday.  As we noted in pretrial discussions or

19     prehearing discussions, I requested the footnote on page 14 to

20     be added or other clarification regarding the waiver of my

21     client's 410 rights.  We went through it page by page, and the

22     court copy should show my client's signatures and the date on

23     the bottom of each page.

24          THE COURT:  Mr. Treanton, you heard what Mr.

25     Dusthimer just said, right?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Do you agree with everything he just

3    said?

4          THE DEFENDANT:  I do.

5          THE COURT:  All right.  Good.  Have you had adequate

6    time to talk with him and go through the process and consider

7    whether or not to enter into this agreement?

8          THE DEFENDANT:  Yes.

9          THE COURT:  All right.  Now I'm gonna ask you to

10   please turn to page 4.  We're gonna talk about pages 4 and 5

11   if you want to have those two open.  Do you have those in

12   front of you, Mr. Treanton?

13         THE DEFENDANT:  I do.

14         THE COURT:  So you see on page 4, paragraph 4 is

15   titled factual basis?

16         THE DEFENDANT:   Correct.

17         THE COURT:  And it states in the beginning, As a

18   factual basis for Defendant's plea of guilty, Defendant admits

19   the following?  Do you see that?

20         THE DEFENDANT:  Yes.

21         THE COURT:  And then it has paragraphs A through I

22   on pages 4 and 5.

23         THE DEFENDANT:  Correct.

24         THE COURT:  Do you see all that?

25         THE DEFENDANT:  Yes, sir.

1        THE COURT:  When you signed this agreement, Mr.

2   Treanton, did you understand that by signing it, you were

3   admitting all the information in paragraph 7 and its

4   subparagraphs A through I was true and correct?

5        THE DEFENDANT:  Yes, sir.

6        THE COURT:  In fact, is all the information in

7   paragraph 7 and its subparagraphs A through I true and

8   correct?

9        THE DEFENDANT:  Yes.

10        THE COURT:  On about November 7, 2019 did you use a

11   minor victim under the age of 18 to engage in sexually

12   explicit conduct?

13        THE DEFENDANT:  Yes.

14        THE COURT:  And did you knowingly use that victim to

15   engage in sexually explicit conduct?

16        THE DEFENDANT:  I did.

17        THE COURT:  You knew the victim was under the age of

18   18, correct?

19        THE DEFENDANT:  Yes.

20        THE COURT:  Did you act for the purpose of producing

21   a visual depiction of that sexually explicit conduct of Minor

22   Victim 1?

23        THE DEFENDANT:  Yes.

24        THE COURT:  Did you use a cellular telephone to

25   produce the visual depiction we've been discussing?

1          THE DEFENDANT:  I did.

2          THE COURT:  And did this occur, this production

3    occur in the Southern District of Iowa?

4          THE DEFENDANT:  Yes.

5          THE COURT:  In Scott County, Iowa?

6          THE DEFENDANT:  Yes.

7          THE COURT:  On January 30, 2020 in Scott County,

8    Iowa, did you knowingly possess videotapes and other matters

9    containing visual depictions of minors engaged in sexually

10   explicit conduct?

11         THE DEFENDANT:  Yes.

12         THE COURT:  And did you possess those on a cellular

13   telephone?

14         THE DEFENDANT:  I did.

15         THE COURT:  In fact, was this a red iPhone?  Did you

16   possess those pictures on a red iPhone?

17         THE DEFENDANT:  Yes.

18         THE COURT:  Did you also possess any of those visual

19   depictions on a black ZTE cellphone?

20         THE DEFENDANT:  No.

21         THE COURT:  Did you use the black ZTE cellphone at

22   any time to possess or produce any of these visual depictions?

23         THE DEFENDANT:  No.

24         THE COURT:  Ms. Schneider, do you believe that I've

25   established an adequate factual basis for a guilty plea to

1  both Counts 1 and 4?

2       MS. SCHNEIDER:  May I ask one question?

3       THE COURT:  What's it pertain to?

4       MS. SCHNEIDER:  Element 2 of Count 4, that the

5  visual depiction was shipped, not just possessed on the

6  phone.

7       THE COURT:  Okay.  And so the visual depictions of

8  minors engaged in sexually explicit conduct we talked about

9  that you possessed on your cellphone, did you receive those

10 through the internet?

11      THE DEFENDANT:  I did.

12      THE COURT:  All right.  Does that satisfy you in

13 that regard?

14      MS. SCHNEIDER:  Yes.  Thank you.

15      THE COURT:  Thank you.

16      Mr. Dusthimer, do you believe I've established an

17 adequate factual basis for a guilty plea to both Counts 1 and

18 4?

19      MR. DUSTHIMER:  Yes.

20      THE COURT:  All right.  I'm not sure that forfeiture

21 basis has been established for the black ZTE phone, so that

22 will be excluded from my findings later if Mr. Treanton does

23 go through with a guilty plea today.

24      MS. SCHNEIDER:  And unfortunately, I don't have any

25 information about that.

1        THE COURT:  It's not in the factual basis either, so

2   we're at a little bit of a loss with that, but that can be

3   taken care of regardless.

4        Mr. Dusthimer, have you had full access to the

5   Government's discovery in this case?

6        MR. DUSTHIMER:  Yes.

7        THE COURT:  And you believe that those support a

8   factual basis for Mr. Treanton's guilty pleas to both Counts 1

9   and 4?

10        MR. DUSTHIMER:  Yes.

11        THE COURT:  Do you know of any possible defenses to

12   the charges which you have not considered and discussed with

13   Mr. Treanton?

14        MR. DUSTHIMER:  I'm not aware of any other possible

15   defenses, and I've not discussed any of them with my client.

16        THE COURT:  All right.  You said you've not

17   discussed what -- your statement was that you've not discussed

18   any other possible defenses with him.

19        MR. DUSTHIMER:  I'm not aware of any in which to

20   discuss, but the Court's question was in two parts as well.

21        THE COURT:  Mr. Treanton, if you plead guilty today,

22   I will order what is called a presentence investigation.  That

23   requires a probation officer to conduct a thorough

24   investigation of this case and to prepare a draft presentence

25   report.  A copy of that draft report will be sent to both

1    attorneys.  Once Mr. Dusthimer gets that report, you should go

2    through it with him carefully.

3           Tell him about any mistakes you find or important

4    things you believe have been left out.  He will then tell the

5    probation officer about those things, and the report can be

6    revised, if necessary, to make sure that it is complete and

7    accurate.  Once a report is finalized, it will be sent to

8    Judge Rose, and you will then have a sentencing hearing.  At

9    that hearing the parties can present witnesses and exhibits on

10   any sentencing issue.

11          In addition, at that hearing you have the right to

12   speak directly to Judge Rose to tell her anything you want her

13   to know as she makes her sentencing decision.  Although it is

14   your right to speak directly to her at that time if you want

15   to, it is also your right to choose not to say anything to her

16   if you do not want to.

17          Do you understand that?

18          THE DEFENDANT:  I do.

19          THE COURT:  Do you have any questions about the

20   sentencing procedure?

21          THE DEFENDANT:  No, sir.

22          THE COURT:  You also need to know the draft and

23   final presentence reports are both sealed documents.  You

24   shall not disclose any part of either report or their contents

25   to anyone other than your attorney.  If you do so, you can be

1   prosecuted for contempt of court.  Do you understand that?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  Do you have any questions about any of

4   that?

5              THE DEFENDANT:  I do not.

6              THE COURT:  I want to talk with you next about your

7   right to appeal in this case.  I'm gonna ask that you turn in

8   the plea agreement to page 13, paragraph 28.  Are you there?

9              THE DEFENDANT:  I'm there.

10             THE COURT:  Generally both you and the Government

11  have the right to appeal your conviction and sentence to the

12  8th Circuit Court of Appeals.  In your case, however, as part

13  of your plea agreement you have waived many of your rights to

14  appeal except under those limited circumstances set forth in

15  paragraph 28.  This paragraph provides that you waive all

16  rights to appeal your conviction, including all motions,

17  defenses and objections you could assert to the charge or the

18  Court's entry of judgment against you except that both you and

19  the Government reserve the right to appeal any sentence

20  imposed to the extent it is authorized by law, and you reserve

21  the right to appeal the Court's denial of your Motion to

22  Suppress entered at Docket No. 42 on June 28, 2021.

23             Do you understand that?

24             THE DEFENDANT:  Yes, sir.

25             THE COURT:  This paragraph also provides that you

1    waive all rights to contest your conviction and sentence in

2    what are called post-conviction proceedings except that you

3    keep the right to appeal or seek post-conviction relief based

4    on grounds of ineffective assistance of counsel or

5    prosecutorial misconduct.  Do you understand that as well?

6                THE DEFENDANT:  I do.

7                THE COURT:  Just to be clear, do you understand as

8    part of your plea agreement the significant rights to appeal

9    that you are giving up and the limited rights to appeal that

10   you are keeping?

11               THE DEFENDANT:  Yes.

12               THE COURT:  All right.  Now I want to confirm with

13   you that you understand that once your guilty plea is accepted

14   by Judge Rose, you will have no right to withdraw your plea of

15   guilty with one exception.  Do you understand that?

16               THE DEFENDANT:  Yes.

17               THE COURT:  The only exception to that for you is if

18   you appeal the issue of the denial of your Motion to Suppress

19   and you are successful, in that instance and that instance

20   only, you will be allowed to withdraw your plea of guilty once

21   Judge Rose accepts it.  Do you understand that?

22               THE DEFENDANT:  Yes, sir.

23               THE COURT:  Otherwise, once she accepts your guilty

24   plea, you cannot withdraw it.  Is that -- all of that clear to

25   you?

1          THE DEFENDANT:  Yes.

2          THE COURT:  All right.  Any questions about any of

3     that?

4          THE DEFENDANT:  No.

5          THE COURT:  Mr. Treanton, is anyone forcing you or

6     pressuring you to plead guilty or has anyone made any promises

7     to you in order to get you to plead guilty other than what is

8     in the plea agreement?

9          THE DEFENDANT:  No, sir.

10          THE COURT:  Mr. Dusthimer, do you believe a guilty

11     plea in this case would be voluntary?

12          MR. DUSTHIMER:  Yes.

13          THE COURT:  Do you know of any legal reason why the

14     plea should not be accepted?

15          THE DEFENDANT:  No.

16          THE COURT:  Do you know of anything I may have

17     omitted that could affect the validity of this plea?

18          MR. DUSTHIMER:  No.

19          THE COURT:  Ms. Schneider, do you know of anything I

20     may have omitted that could affect the validity of this plea?

21          MS. SCHNEIDER:  No, your Honor

22          THE COURT:  Back to you, Mr. Treanton.  You and I

23     have gone through a lot of information here today.  I want to

24     be sure you understand absolutely all of it because I do not

25     want you to come back at any time in the future and state or

1  claim that you were confused or that someone forced you to

2  plead guilty, okay?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  So let's confirm, have you been able to

5  understand absolutely everything we've discussed here today?

6          THE DEFENDANT:  I have.

7          THE COURT:  Do you have any questions about any of

8  it?

9          THE DEFENDANT:  I do not.

10          THE COURT:  Is anyone forcing you or pressuring you

11  to plead guilty?

12          THE DEFENDANT:  No.

13          THE COURT:  Are your guilty pleas today voluntary

14  and your own decision?

15          THE DEFENDANT:  Yes, they're voluntary and my own

16  decision, sir.

17          THE COURT:  Good.  In that case, Mr. Treanton, would

18  you please stand?

19          Mr. Treanton, formally and for the record, how do

20  you plead to Count 1 of the indictment charging you with

21  Production of Child Pornography, in violation of Title 18 U.S.

22  Code Sections 2251(a) and 2251(e), guilty or not guilty, sir?

23          THE DEFENDANT:  Guilty, sir.

24          THE COURT:  Formally and for the record, how do you

25  plead to Count 4 of the indictment charging you with

1 | Possession of Child Pornography, in violation of Title 18 U.S.

2 | Code Sections 2252 (a)(4)(B) and 2252(b)(2), guilty or not

3 | guilty, sir?

4 |        THE DEFENDANT:  Guilty, sir.

5 |        THE COURT:  The record should reflect the defendant,

6 | Justin Treanton, has pled guilty to Counts 1 and 4 of the

7 | indictment, in violation of the code sections I have just

8 | cited.  You may have a seat.

9 |        Based on the record made today, my review of the

10 | materials submitted in connection with this case, my

11 | observations of Mr. Treanton in open court as he responded to

12 | my questions, I find he's competent, he fully understands the

13 | charges against him.  There's a factual basis for this plea.

14 | He knows the minimum and maximum punishments that may be

15 | imposed on this charge.

16 |        He knows his jury rights, and he has voluntarily

17 | waived those rights.  I further find his decisions to plead

18 | guilty are voluntary, knowing, and not the result of any

19 | force, pressure, threats or promises other than the promises

20 | made by the Government in the plea agreement.

21 |        I therefore conclude Mr. Treanton should be found

22 | guilty based upon his pleas of guilty.  I also determine the

23 | Government has established the requisite nexus between the

24 | offenses and the red iPhone that was seized in forfeiture.  I

25 | have signed and I am filing my report and recommendation

1  recommending Judge Rose accept Mr. Treanton's guilty pleas.

2  Counsel will receive a copy of the report.  Parties have 14

3  days to file objections.

4          If no objections are made, then Judge Rose may

5  accept my recommendation of Mr. Treanton's guilty pleas by

6  simply entering a written order doing so.  I also order a

7  presentence investigation.  The parties should pay careful

8  attention to the deadlines concerning that report, which will

9  be set forth in an order to be issued by Judge Rose's

10  chambers.

11          I can advise the parties, however, the Government

12  shall provide a written statement of Defendant's offense

13  conduct within 14 days, by November 19, to probation and

14  defense counsel.  Further, sentencing is set for February 28,

15  2022, at 1 p.m.  Pursuant to the parties' agreement, pending

16  sentencing the previous order of detention remains in place.

17          Ms. Schneider, anything further?

18          MS. SCHNEIDER:  No, your Honor.  Thank you.

19          THE COURT:  Mr. Dusthimer?

20          MR. DUSTHIMER:  No.  Thank you.

21          THE COURT:  Mr. Treanton, good luck.  We're

22  adjourned.

23          (Wherein the hearing concluded at 10:27 a.m.)

24

25

1                    REPORTER'S CERTIFICATION

2

3           I, Debra Thornburg, a Certified Shorthand Reporter of the

4    State of Iowa and Federal Official Realtime Court Reporter in

5    and for the United States District Court for the Southern

6    District of Iowa, do hereby certify, pursuant to Title 28,

7    United States Code, Section 753, that the foregoing is a

8    correct transcript of the stenographically reported

9    proceedings held in the above-entitled matter and that the

10   transcript page format is in conformity with the regulations

11   of the Judicial Conference of the United States.

12

13                              /s/ Debra M. Thornburg

14                              Debra M. Thornburg
                                Official Court Reporter
15                              United States District Court
                                Southern District of Iowa
16

17                              Date:  March 28, 2022

18

19

20

21

22

23

24

25