IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
EASTERN DIVISION


- - - - - - - - - - - - X
UNITED STATES OF AMERICA, :
                         :
      Plaintiff,         :
                         :
vs.                      :      Case No. 3:20-cr-00093
                         :
JUSTIN TREANTON,         :   SENTENCING HEARING TRANSCRIPT
                         :
      Defendant.         :
- - - - - - - - - - - - X


                          Courtroom, First Floor
                          U.S. Courthouse
                          131 East Fourth Street
                          Davenport, Iowa
                          Monday, February 28, 2022
                          1:00 p.m.


BEFORE:  THE HONORABLE STEPHANIE M. ROSE, Chief Judge.


APPEARANCES:

For the Plaintiff:        ANDREA L. GLASGOW, ESQ.
                          United States Attorney's Office
                          131 East Fourth Street, Suite 310
                          Davenport, Iowa  52801


For the Defendant:        JACK E. DUSTHIMER, ESQ.
                          Law Offices of Jack E. Dusthimer
                          1503 Brady Street
                          Davenport, Iowa  52803-4600




                    KELLI M. MULCAHY, CSR, RDR, CRR
                      United States Courthouse
                   123 East Walnut Street, Room 115
                      Des Moines, Iowa 50309

1               P R O C E E D I N G S

2          (In open court, with the defendant present.)

3          THE COURT:  Thank you.  You can be seated.

4          We are here in the matter of the United States vs.

5   Justin Treanton.  It's Case No. 3:20-cr-93.  The United States

6   Probation Office is represented by Ashley Adams-Moon.  The U.S.

7   Attorney's Office is represented by Andrea Glasgow, and she's

8   joined by DCI Special Agent Mike McVey.  The defendant is

9   personally present and represented by his attorney, Jack

10  Dusthimer.

11         Mr. Treanton, do you recall being in court in November

12  and pleading guilty to Counts 1 and 4 of an indictment filed

13  against you back in September of 2020?

14         THE DEFENDANT:  Yes, ma'am.

15         THE COURT:  And Count 1 of that indictment charged you

16  with production of child pornography; is that right?

17         THE DEFENDANT:  Correct.

18         THE COURT:  And I assume you recall that that offense

19  is punishable by at least 15 years and up to 30 years in prison,

20  at least 5 years and up to life on supervised release, a fine of

21  up to $250,000, and a $100 special assessment.  Do you remember

22  those penalties?

23         THE DEFENDANT:  Yes.  That's my understanding.

24         THE COURT:  And Count 4 charged you with possession of

25  child pornography, and that is punishable by up to 20 years in

1   prison, at least 5 years and up to life on supervised release, a

2   fine of up to $250,000, and another $100 special assessment.  Do

3   you remember those penalties as well?

4           THE DEFENDANT:  Yes, ma'am.

5           THE COURT:  And you understand you're here today to be

6   sentenced?

7           THE DEFENDANT:  I do.

8           THE COURT:  Okay.  I have received and read the

9   presentence report.  The most recent report is dated February

10  18th of 2022, and it's filed at Docket 65.  I have also read and

11  considered the sentencing memorandums filed by the parties at

12  Dockets 67 and 70, as well as today's filing found at Docket 72.

13          Ms. Glasgow, did you have a chance to review the

14  presentence report on behalf of the United States?

15          MS. GLASGOW:  Yes, Your Honor.

16          THE COURT:  And it looks like I'll need to resolve the

17  issue in the newest filing, but other than that, are there any

18  disputed guideline issues or factual matters I need to resolve

19  from the Government's point of view?

20          MS. GLASGOW:  No, Your Honor.

21          THE COURT:  Okay.  Mr. Dusthimer, did you have a chance

22  to review the presentence report with your client?

23          MR. DUSTHIMER:  I did.

24          THE COURT:  Can you briefly outline how you

25  accomplished that?

1          MR. DUSTHIMER:  I believe it was first received on

2   December 22nd.  I mailed it down to him.  We had a telephone

3   call on February 3rd, and I filed my objections the same day.  I

4   received the final report, I think, on the 21st, and I did a

5   cover letter -- maybe it was the 22nd.  I did a cover letter

6   with him at that time as well.

7          THE COURT:  And anything other than the newest filing

8   that I need to resolve for your client today?

9          MR. DUSTHIMER:  No.  Thank you.

10          THE COURT:  Okay.  Mr. Treanton, did you have enough

11   time to review your presentence report with your lawyer?

12          THE DEFENDANT:  I did.

13          THE COURT:  Was he able to answer whatever questions

14   you may have had?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Have you been happy with him as your

17   lawyer?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Okay.  Then with the agreement of the

20   parties, I do adopt the guideline calculation contained within

21   the final presentence report.  That calculation is as follows:

22   For Count 1, which is the production of child pornography count,

23   it starts at a base offense level of 32.

24          There is a four-level increase because the offense

25   involved minors who had not yet attained the age of 12.

1          There's a two-level increase because the offense

2     involved the commission of a sex act or sexual contact.

3          There is a two-level increase because the defendant

4     knowingly engaged in the distribution of child pornography.

5          There is a four-level increase because the material

6     portrayed sadistic or masochistic conduct or other depictions of

7     violence.

8          There is a two-level increase because the defendant was

9     the parent of the child who was victimized.

10          There is a two-level increase for obstruction of

11     justice.

12          That gives us an adjusted offense level of 48.  There

13     is then a five-level increase because of the defendant's conduct

14     that involves engaging in a pattern of prohibited sexual

15     conduct.

16          There is then a two-level decrease for acceptance of

17     responsibility.

18          Is the Government moving for that third level?

19          MS. GLASGOW:  Yes, Your Honor.

20          Just to clarify, I thought you just said a five-level

21     for pattern, and I think it's only a two-level.

22          THE COURT:  It's a two-level?

23          It's listed as a five-level increase under paragraph

24     56.

25          MS. GLASGOW:  I'm seeing that, Your Honor.  I think I

1   maybe had copied it over wrong.  I apologize.

2          THE COURT:  Okay.  So the Government's moving for that

3   third level?

4          MS. GLASGOW:  We are, Your Honor.

5          THE COURT:  So that gives us a Total Offense Level 53,

6   but because the guidelines cap out at a 43, that base offense

7   level becomes 43.

8          Defendant is a criminal history category of V, so that

9   would ordinarily give us a guideline range of life imprisonment,

10  but because of the statutory maximum here applicable to Count 1

11  and Count 4, that range effectively becomes 600 months'

12  imprisonment; 360 months on Count 1, which can be run

13  consecutively to the 240 months' imprisonment on Count 4.  Those

14  are the statutory maximums available on each of those two

15  counts.  Probation is precluded by statute.

16         Supervised release of 30 to life is applicable on each

17  count.  The fine range here is 50 to 250 thousand dollars on

18  each count, although I don't intend to impose a fine.  We'll

19  talk about restitution here in a few moments.  And there is a

20  $100 special assessment per count for a total of $200.

21         Ms. Glasgow, I understand that there aren't any victims

22  who wish to be heard, but would you like to make any record with

23  respect to the request by one of the prior, I guess, victim's

24  fathers?

25         MS. GLASGOW:  No further record than the filing, Your

1  Honor.  As the Court outlined, I did file a brief brief at

2  Docket 72 outlining the request to speak.

3          THE COURT:  Mr. Dusthimer, does your client have a

4  position with respect to that request?

5          MR. DUSTHIMER:  We are resisting, Your Honor.  We don't

6  believe that it's an appropriate submission under these facts

7  and circumstances.

8          THE COURT:  Thank you, Mr. Dusthimer.

9          Here's the bottom line on this:  I absolutely

10  understand why this man would want to speak to the Court.  I

11  would in his position as well.  The reason that I'm not going to

12  allow it is because it creates an appellate issue that, frankly,

13  makes this case live longer than it needs to otherwise live.

14          If I allow him to speak and the Eighth Circuit says I

15  should not have done that -- because what I assume he would say

16  is not kind things about this defendant.  And if the Eighth

17  Circuit decides that I shouldn't have done that, the case comes

18  back and has to be resentenced.

19          If Mr. Dusthimer were to allow that to happen and this

20  man speaks and says things that are not positive about the

21  defendant, then the defendant may accuse Mr. Dusthimer of

22  ineffective assistance of counsel, and then that turns into a

23  whole nother layer of appellate issues that we deal with for

24  years down the road to come.

25          I think all of that is a risk that we need not take

1  here.  There is ample evidence in the record of the

2  dangerousness of this defendant and the seriousness of the

3  offenses that he has committed in this case, and those things, I

4  think, are where I should spend my focus at the time of

5  sentencing.

6          So although I am very sympathetic to this man, I don't

7  think it is wise to allow that kind of statement to be made

8  here, and so I do decline to allow him to speak.

9          Ms. Glasgow, what is your position with respect to an

10  appropriate sentence in this case?

11          MS. GLASGOW:  Thank you, Your Honor.

12          The Government is seeking a guideline sentence in this

13  case.  As the Court has just gone through, the enhancements in

14  this case really speak to the level of violence and the

15  aggravating factors here.

16          The defendant victimized his own child, who was only 4

17  years old at the time.  The offense included hands-on sex abuse.

18  His distribution of the child pornography, the material then

19  included violence and S & M material.  There was obstruction of

20  justice.  There's a pattern of conduct.  All of those things

21  separately, aside from the guidelines enhancements, are

22  aggravating factors here.

23          In addition, as the PSR indicates, this is an issue

24  where the child victim had been previously removed from

25  Mr. Treanton's care, and it's tragic that this situation was

1   allowed to unfold and that Mr. Treanton took the very small

2   opportunity of access to the child that he had to do this

3   behavior; to commit the sex abuse, to record it, to distribute

4   it.

5          All of this just shows the predatory nature of this

6   defendant in the very limited access he had to the child and how

7   quickly he took that situation to where we are right now.

8          Additionally, as is outlined in the Presentence

9   Investigation Report, aside from his own production of child

10  pornography, he also possessed child pornography, which the

11  nature of is outlined in the PSR.  It's aggravated child

12  pornography, including babies and toddlers.  There's videos

13  dating back to 2015, images back to 2017.

14         All in all, this is aggravated production and

15  possession of child pornography, and a guideline sentence is

16  appropriate.

17         THE COURT:  Thank you, Ms. Glasgow.

18         What is the Government seeking in restitution for the

19  victims of the Jenny and the Tara series?

20         MS. GLASGOW:  Your Honor, the Government is seeking

21  $3,000 each.

22         THE COURT:  And is the Government asking me to apply

23  the JVTA assessment or are you waiving that in light of the

24  restitution to Jenny and Tara?

25         MS. GLASGOW:  Yes, we are, Your Honor.

1           THE COURT:  Okay.  As I understand it -- I know the

2  child is dead, she died in a house fire, as did Defendant's

3  mother and stepfather, who had care of her at the time of her

4  death.  Where is Mom in all of this?  Is she seeking any kind of

5  restitution for funeral expenses, for anything else?

6           MS. GLASGOW:  No, Your Honor.  We have -- our victim/

7  witness coordinators have been in contact with her throughout

8  this case.  She had not wanted to submit a statement and has not

9  sought any restitution request.

10           THE COURT:  Okay.  Thank you.

11           Mr. Dusthimer, what is your suggested sentence here?

12           MR. DUSTHIMER:  I always try to be respectful to the

13  Court's question.  Is it time also for me to make my argument on

14  behalf of my client as well?

15           THE COURT:  Yes.

16           MR. DUSTHIMER:  Okay.  I just wanted to make sure.

17           THE COURT:  Yes.

18           MR. DUSTHIMER:  When I look at Mr. Treanton, I see a

19  gentleman who's a day younger than my middle child.  I look at

20  him, and I -- you know, decisions that have been made, the

21  functions of where he is today, the Presentence Investigation

22  Report touches on the struggles of his upbringing and the

23  struggles of his family relationship.  I include kidnapping,

24  victim of child abuse, substance abuse.

25           And I think of where he is today at age, if I did my

1  math right, 37 and where he's going to be if the Court imposes

2  the whole 50 years.  If I did my math right, counting good time

3  and counting time served, he'll be over 80.

4          It is an intense struggle because he's been very open

5  with me.  We did not challenge or contest any of the

6  circumstances that are set forth in the plea agreement.  He

7  regrets what he did, but he also admits that he did them.  We

8  pled guilty, even though, depending on how these things go, it

9  may not have made any difference to him, and he's hoping and

10 believing the Court will take his consideration and his decision

11 to accept responsibility in determining a sentence which is

12 sufficient, but not greater.

13         As I set forth in my sentencing memorandum, if we give

14 him 200 months, that gives the Federal Bureau of Prisons at

15 least another 15 years of therapy and cognitive treatment and

16 counseling, and he will be getting out at just over the age of

17 50.  As I noted, that he does not qualify for anything other

18 than the minimum good time calculations regardless of the

19 circumstances because of the nature of the offense.

20         This Court is aware of the sentencing guidelines' most

21 recent child abuse -- or child pornography reports that suggest

22 that, you know, with the abysmal development of the Internet

23 that what we first originally thought were significant, and

24 sometimes even grotesque, aggravating factors are not quite, but

25 almost, run-of-the-mill.  That's my paraphrase of the sentencing

1  guidelines' summary for child pornography sentences and the

2  sentencing range.

3          He knows that there's restitution.  He's never

4  challenged that.  But we truly submit that a sentence

5  sufficient, but not greater than necessary, for these types of

6  events under -- for this person that's sitting next to me today,

7  200 months is a sufficient, but not greater than necessary,

8  sentence.

9          I note that if you don't add any of the aggravating

10  factors but you don't give him acceptance because of the

11  obstruction, a level 32, criminal history puts him at 188 to

12  235.  And I also note we're kind of in the middle of that one,

13  so that would be the -- not quite the middle, I guess.

14          That would be the end of my argument.

15          THE COURT:  Thank you, Mr. Dusthimer.

16          Any program or placement requests?

17          MR. DUSTHIMER:  At one point he said Milan, Michigan,

18  because of family.

19          THE COURT:  Okay.  Mr. Treanton, this is the time in

20  the hearing when you can say what you might want to say.  You

21  don't have to say anything, but is there anything you would like

22  to say at this time?

23          THE DEFENDANT:  Well, I woke up at 3 o'clock this

24  morning and kind of jotted down a bunch of things.  I've been

25  somewhat -- I guess what I'm stalling to say is all of the

1   actions that I've taken in the past five years, whether it be to

2   my daughter's mother, which is in the back row here, or

3   Mr. Heatherly, I believe his last name is, I know all my actions

4   that I've taken against anybody in their families or my family

5   has -- has greater consequences than any sentence that the Court

6   can impose on me due to just mental anguish and other factors

7   that -- I'm sorry.  I wasn't really -- I guess I wasn't really

8   prepared to actually read this.

9        I guess losing the trust in all the people that once

10  upon a time trusted me, that's kind of one of the biggest

11  burdens that are kind of taking me under.  I apologize, but the

12  words will never take back any of the things that I've been

13  accused of.  I'll never be able to make things right with any of

14  my family since -- especially since the fire.

15       It's just a lot of -- a lot of things that are from my

16  past are where the fault lies within what's going on today, and

17  I just -- I hope that eventually the people that I affected

18  their lives can forgive me or come to terms with thinking about

19  forgiving me one day.

20       I guess that's all I -- all I really have.

21       THE COURT:  Thank you, Mr. Treanton.

22       In this case I have considered all of the factors under

23  3553(a) and the advisory guidelines and the statutory penalties.

24       In January of 2020, an undercover officer in New

25  Zealand, who was investigating the sexual exploitation of

1  children, met the defendant in a child pornography-focused chat

2  room.   Defendant soon sent the undercover officer videos of

3  himself sexually abusing his preschool-aged daughter.   He also

4  described to the undercover officer that he had been abusing his

5  daughter for about a year.   The videos and chats were ultimately

6  traced back to the defendant in Bettendorf, Iowa.

7          Further investigation led to the seizure of the

8  defendant's cell phone, and on that phone officers found

9  evidence of Defendant's sexual abuse of his daughter, as well as

10 a child pornography collection that featured additional children

11 and focused heavily on infants and toddlers and showed a strong

12 interest in bondage and in torture pornography that involved

13 toddlers.

14         After Defendant was arrested for sexually abusing his

15 daughter, he tried to find someone on the outside of the prison

16 to locate and erase the contents of his phone, giving another

17 inmate step-by-step instructions on how to do so to pass along

18 to someone outside the facility.

19         The defendant's daughter, who was the victim of his

20 abuse, died in a house fire after he was arrested.   That fire

21 also killed the defendant's mother and stepfather.

22         The defendant is 37 years old.   He was born in Iowa

23 City and raised primarily in Bettendorf and Davenport.   The

24 defendant's father was largely absent.   The family moved

25 frequently.   Defendant reports attending 22 schools in eight

1   districts as a child.

2          He was sexually abused as a child and may also be the

3   victim of production of child pornography himself.

4          He has never married.  His only child was the daughter

5   that is now dead.

6          Defendant's in good physical health.  He has some

7   situational depression but has never been diagnosed with any

8   kind of serious mental health issue.

9          His substance abuse history reaches back to ages 13 and

10   14 for marijuana, with heavy daily use of marijuana beginning by

11   age 16.  He also has a history of severe alcohol abuse dating

12   back to ages 14 to 15 and lesser uses of methamphetamine and

13   cocaine.

14          Defendant dropped out of high school in the tenth grade

15   but later earned a GED.  He has been employed throughout his

16   adult life, largely in construction.

17          Defendant's criminal history is lengthy and violent,

18   which is unusual, frankly, in our child pornography cases.  It's

19   not unusual in production cases to see somebody who has prior

20   sex abuse convictions with children, but it is unusual to see

21   this level of violence displayed in a criminal history.

22          Defendant has a juvenile adjudication for burglary, but

23   then he has adult convictions for aggravated battery with a

24   weapon, battery causing bodily harm, domestic abuse assault

25   second, domestic abuse, two convictions for assault, a

1  harassment, a child endangerment, another burglary conviction,

2  an OWI, a possession of controlled substance, a possession of

3  marijuana, disorderly conduct, criminal mischief, and public

4  intoxication.

5       On top of that, he has struggled to stay within the

6  rules while he's been in custody pending resolution of this

7  case.  At the Scott County Jail, he incurred six different

8  disciplinary violations for threatening other people and

9  disrupting security, refusing to obey orders or fighting.  He

10 then accrued an additional eight violations at the Muscatine

11 County Jail for disrupting security, demonstrating or

12 encouraging others to demonstrate, refusing lawful orders,

13 covering up lights or cameras, interfering with official

14 actions, or harassing the corrections staff.

15      All of these violations at Scott County Jail and

16 Muscatine County Jail spanned over the course of more than a

17 year, so it's not just an adjustment issue as he was newly in

18 custody.  It is something that has been pervasive in his stay.

19      This is a horrific crime, and the fact that the victim

20 is dead and will never have a chance to heal from what the

21 defendant did to her is incredibly tragic.  That the defendant

22 has harmed other people in his criminal history is telling.

23 That his interest is not only in child pornography but in a

24 particular genre of pornography that involves pain and torture

25 is telling.

1          I have done this now for almost ten years as a judge,

2  and I see a lot of the same series over and over again.  I see a

3  lot, unfortunately, of the Jenny series.  I see a lot of the

4  Tara series.  I have never seen this series that is described in

5  paragraph 35(a) of the presentence report.  I could have gone

6  the rest of my life without knowing that that stuff was out

7  there.  That there are people who enjoy torturing toddlers and

8  that the defendant decided that was what he was going to collect

9  or view in this case is -- is beyond words almost to me.

10         I work very hard when I sentence people to make sure

11 that people get credit for acceptance of responsibility, but I

12 don't know how to do it here because, for one, this is perhaps

13 one of the most dangerous people I've ever sentenced as far as

14 his recidivist behaviors and as far as the severity of what he

15 collected and what he did.

16         In order to give him some chance at acceptance of

17 responsibility, I would have to give an enormous reduction

18 because, frankly, he is off the charts in the guideline analysis

19 here, and I'm not comfortable doing that.  I don't think that

20 he's somebody who should do any less here than the statutory

21 maximum that I can give to him.  I think he's an extreme danger

22 to the community.

23         And so, having considered all of the factors here, I do

24 impose a sentence of 360 months on Count 1, 240 months on Count

25 2, with those sentences to run consecutively to one another, for

1   a total sentence of 600 months' imprisonment.

2           I know that there's a lot of analysis going on right

3   now in the guidelines and in the child pornography guidelines in

4   particular, but these are not adjustments that we see in every

5   case.  We don't see obstruction in every case.  We don't see a

6   parent abusing their child in every case.  We don't see torture

7   in every case.  He is well outside the norm.

8           It's rare that we have that five-level increase for

9   repetitive sexual conduct.  To get to a 53 capped at a 43,

10  highly, highly unusual.  And so even if I were ignoring the

11  guideline analysis here, I would have varied to the statutory

12  maximums in this case because of the serious nature of what

13  happened.

14          So I will recommend that the Bureau of Prisons place

15  the defendant at Milan, Michigan, if he qualifies for that

16  institution.

17          If the defendant is released from prison, he'll be on

18  supervised release for the rest of his life.  He is somebody who

19  obviously needs to be closely monitored and closely watched.  As

20  Ms. Glasgow said, that he took the very brief opportunities he

21  had to be around his daughter and used it to immediately

22  sexually abuse her, videotape it, then chat about it and brag

23  about it, speaks to how quickly he can become dangerous, and so

24  he's going to have to be supervised for the rest of his life

25  closely.

1          In addition to all the special conditions of

2    supervision, I impose all of the special conditions that are

3    suggested in the presentence report.  These include sex abuse --

4    I'm sorry -- sex offense-specific programming; periodic

5    polygraph testing; refraining from associating with anyone

6    engaged in the exploitation of minors -- and all of these are

7    laid out more fully in the sentencing order -- going to or

8    remaining anyplace for the purpose of observing children, so

9    defendant's banned from being anywhere near parks, schools,

10   playgrounds without the prior approval of the probation.

11          He can have no direct contact, including through

12   personal, email, electronic, or otherwise, with any child or

13   anybody he should reasonably know to be under the age of 18.

14          He can't have any contact with the victims here, and I

15   include here as victims the boy who was the subject of the brief

16   filed at Docket 72.

17          Defendant can't possess or view any visual depictions

18   of what would be considered essentially pornography or sexually

19   explicit conduct.  He can't have access to the Internet or

20   possess or use any kind of computer that has Internet

21   capabilities, including through phones that have those kind of

22   capabilities, unless the probation office approves it.

23          If he's allowed to have a computer or a phone that has

24   Internet capability, he's going to have to agree to installation

25   of monitoring hardware and software and the removal of those

1    items for searches periodically.  He can't have any kind of

2    camera, including in any kind of cell phone, or any other

3    recording device, without prior approval of the probation

4    office.

5         He is going to have to pay $3,000 in restitution to the

6    victims of the Tara series and the Jenny series.  While that

7    money is due and owing, the defendant will have to participate

8    in a restitution program, which may include offset of any tax

9    refund or Government payment.  It may include garnishment of

10   wages.

11        The defendant will have to provide complete access to

12   his financial information to the probation office so they can

13   set up a payment plan.  He can't solicit or incur any new debt

14   without permission from the probation office.

15        He'll have a substance abuse testing and treatment

16   condition.  He's prohibited from using alcohol of any kind.  He

17   can't patronize business establishments that make more than half

18   their money from the sale of alcohol.

19        He has to submit to our standard search condition, and

20   he'll have to register as a sex offender as further directed by

21   whatever state in which he lives.

22        I find Defendant does not have the ability to pay

23   interest on the restitution that has been ordered, so that will

24   not be done.

25        Defendant -- I'm sorry.  The Government has waived the

1  Justice for Victims of Trafficking Act assessment, so I do find

2  that does not apply.

3          I do order forfeiture consistent with the Preliminary

4  Order of Forfeiture filed December 17th of 2021 at Docket 59.

5          Defendant has to pay the $100 special assessment per

6  count for a total of $200.

7          The last thing to talk to you about, Mr. Treanton, is

8  your right to appeal.  You have 14 days from today to appeal

9  this sentence.  If you decide you want to appeal, let

10 Mr. Dusthimer know.  He'll file the paperwork for you.  It won't

11 cost you anything.  And he would handle the appeal.  That would

12 not cost you anything either.

13         If a notice of appeal is not filed in the next 14 days,

14 you forever give up your right to challenge this sentence.

15         Ms. Glasgow, I think we have Counts 2 and 3 to be

16 dismissed.

17         MS. GLASGOW:  Yes, Your Honor.  I move to dismiss

18 those.

19         THE COURT:  And those are dismissed.

20         Anything else for the Government?

21         MS. GLASGOW:  No, Your Honor.

22         THE COURT:  Ms. Adams-Moon, for probation?

23         THE PROBATION OFFICER:  No, Your Honor.

24         THE COURT:  Mr. Dusthimer, for the defendant?

25         MR. DUSTHIMER:  May I double-check?

1          THE COURT:  Go ahead.

2          (Mr. Dusthimer conferred with Mr. Treanton.)

3          MR. DUSTHIMER:  Thank you.  Nothing further.

4          THE COURT:  All right.  We're adjourned.

5          (Proceedings concluded at 1:30 p.m.)

23

C E R T I F I C A T E

          I, Kelli M. Mulcahy, a Certified Shorthand Reporter of

the State of Iowa and Federal Official Realtime Court Reporter

in and for the United States District Court for the Southern

District of Iowa, do hereby certify, pursuant to Title 28,

United States Code, Section 753, that the foregoing is a true

and correct transcript of the stenographically reported

proceedings held in the above-entitled matter and that the

transcript page format is in conformance with the regulations of

the Judicial Conference of the United States.

          Dated at Des Moines, Iowa, this 28th day of March,

2022.


                              Kelli M. Mulcahy, CSR, RDR, CRR
                              Federal Official Court Reporter